UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

NATHAN WILLIAMS,

Petitioner,

v.

BRIAN E. WILLIAMS, SR., *et al.*,

Respondents.

Case No. 3:17-cv-00365-HDM-WGC

ORDER

Introduction

In this habeas corpus action, brought *pro se* by Nathan Williams, an individual incarcerated at Nevada's High Desert State Prison, the remaining claims in Williams' habeas petition are before the Court for adjudication on their merits. The Court will deny Williams' petition and will deny Williams a certificate of appealability.

Background

On November 13, 2013, Williams was charged by criminal complaint with conspiracy to commit robbery, burglary while in possession of a deadly weapon, robbery with use of a deadly weapon, and assault with a deadly weapon. *See* Criminal Complaint, Exh. 2 (ECF No. 10-2) (The exhibits cited in this order were filed by Respondents and are found in the record at ECF Nos. 10, 11, 12 and 18.).

A preliminary hearing was held on October 30 and November 8, 2013. *See* Transcripts of Preliminary Hearing, Exhs. 10, 11 (ECF Nos. 10-10, 10-11). Attorney Blaine Beckstead represented Williams at his preliminary hearing. *See id*. At the conclusion of the preliminary hearing, the justice court bound Williams over to the district court. An information was then filed on November 13, 2013, charging Williams with conspiracy to commit robbery, burglary while in possession of a deadly weapon, robbery with use of a deadly weapon, assault with a deadly weapon, and coercion with

use of a deadly weapon. *See* Information, Exh. 14 (ECF No. 10-14); *see also* Amended Information, Exh. 16 (ECF No. 10-16).

At a hearing on February 20, 2014, the state district court allowed Beckstead to withdraw, because of conflicts between Williams and Beckstead, and the court appointed attorney John Parris in his stead. *See* Transcript, February 20, 2014, Exh. 18 (ECF No. 10-18). Soon thereafter, Williams requested permission to represent himself, and, on March 11, 2014, the court granted that motion. *See* Transcript, March 11, 2014, Exh. 19 (ECF No. 10-19). The court appointed Parris to act as stand-by counsel. *See id*.

Williams' jury trial was conducted between April 14 and 16, 2014. *See* Transcripts of Trial, April 14, 15 and 16, 2014, Exhs. 56, 26, 27 (ECF Nos. 11-24, 10-26, 10-27). At the conclusion of the trial, the jury found Williams guilty of burglary while in possession of a deadly weapon, robbery, assault with a deadly weapon, and coercion. *See* Transcript of Trial, April 16, 2014, Exh. 27, pp. 99–101 (ECF No. 10-27, pp. 100–102).

Williams was sentenced on July 1, 2014. *See* Transcript of Sentencing, Exh. 40 (ECF No. 11-8). He was adjudicated an habitual criminal, and was sentenced to: 18 years in prison, with parole eligibility after 6 years, for the burglary while in possession of a deadly weapon; a concurrent sentence of 18 years in prison, with parole eligibility after 6 years, for the robbery; a concurrent sentence of 72 months in prison, with parole eligibility after 28 months, for the assault with a deadly weapon; and a concurrent sentence of 72 months in prison, with parole eligibility after 28 months, for the coercion. *See id.* The judgment of conviction was filed on July 22, 2014. *See* Judgment of Conviction, Exh. 50 (ECF No. 11-18).

Williams appealed, and counsel was appointed for him on appeal. *See* Order of Limited Remand for Appointment of Counsel, Exh.53 (ECF No. 11-21); Appellant's Opening Brief, Exh. 88 (ECF No 12-25). The Nevada Supreme Court affirmed the

judgment of conviction on March 17, 2016. *See* Order of Affirmance, Exh. 58 (ECF No. 11-26).

On April 28, 2016, Williams filed a petition for writ of habeas corpus in the state district court. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 61 (ECF No. 11-29). The state district court denied that petition on August 25, 2016. *See* Findings of Fact, Conclusions of Law and Order, Exh. 70 (ECF No. 12-7). Williams appealed. *See* Appellant's Informal Brief, Exh. 77 (ECF No. 12-14). The Nevada Court of Appeals affirmed the denial of Williams' state habeas petition on April 19, 2017. *See* Order of Affirmance, Exh. 80 (ECF No. 12-17).

On August 16, 2016, Williams filed a petition for writ of habeas corpus in the Nevada Supreme Court. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exh. 94 (ECF No. 18-1). The Nevada Supreme Court denied that petition on October 13, 2016, declining to exercise jurisdiction over it. *See* Order Denying Petition, Exh. 95 (ECF No. 18-2).

This Court received Williams' *pro se* petition for writ of habeas corpus, initiating this action, on June 8, 2017 (ECF No. 6). The Court reads Williams' petition to assert the following grounds for relief:

1. Williams' federal constitutional rights were violated because "[t]here wasn't a single black person on the [jury] venire."

2. Williams' federal constitutional right to a speedy trial was violated.

3. Williams' federal constitutional rights were violated because of ineffective assistance of his counsel before he began to represent himself, because of ineffective assistance of his stand-by counsel, and because he did not knowingly and voluntarily choose to represent himself.

4. Williams' federal constitutional rights were violated because of ineffective assistance of his counsel before he began to represent himself, and because of ineffective assistance of counsel on his direct appeal.

5. Williams' federal constitutional rights were violated because there was insufficient evidence presented at trial to support his conviction.

6. Williams' federal constitutional rights were violated because he was denied discovery of evidence related to false accusations made previously against him by one of the victims in this case, and because he was not allowed to present such evidence at trial.

7. Williams' federal constitutional rights were violated as a result of prosecutorial misconduct, and abuse of discretion by the trial court.

a. The prosecution failed to disclose evidence related to false allegations made previously against him by one of the victims in this case.

b. The trial court prompted Williams' counsel to withdraw.

c. The prosecutor commented on Williams' decision not to testify, and the trial court did not take any action regarding such comments.

d. The trial court continued the trial date.

e. The trial court interrupted Williams' cross-examination of witnesses.

f. The trial court had Williams removed from the courtroom.

8. Williams' federal constitutional rights were violated as a result of the cumulative effect of the errors he alleges.

*See* Petition for Writ of Habeas Corpus (ECF No. 6).

On October 3, 2017, the respondents filed a motion to dismiss (ECF No. 9), arguing that Grounds 5, 6 and 7 of Williams' petition are procedurally defaulted and should be dismissed. The Court ruled on the motion to dismiss on August 6, 2018, granting it in part and denying it in part. *See* Order entered August 6, 2018 (ECF No. 26). The Court granted the motion to dismiss with respect to Grounds 5, 7b, 7c, 7d and 7f, and dismissed those claims. *See id*. The Court denied the motion to dismiss with respect to Grounds 6, 7a and 7e, without prejudice to Respondents reasserting the procedural default defense to those claims in their answer. *See id*.

Respondents then filed an answer on January 24, 2019 (ECF No. 34), responding to Williams' remaining claims. Williams filed a reply (ECF No. 37) on March 19, 2019.

Discussion

Standard of Review

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing standard as "a difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

Analysis of Petitioner's Claims

Ground 1

In Ground 1, Williams claims that his federal constitutional rights were violated because "[t]here wasn't a single black person on the [jury] venire." Petition for Writ of Habeas Corpus (ECF No. 6), p. 3.

Williams asserted this claim on his direct appeal, and the Nevada Supreme Court ruled on it as follows:

> Appellant Nathan Williams argues first that the district court erred by denying his motion for a new jury venire, as the venire did not include African Americans and thus was not composed of a fair cross-section of the community. Relying on *Buchanan v. State*, 130 Nev., Adv. Op. 82, 335 P.3d 207 (2014), he contends that he was entitled to an evidentiary hearing to establish that the underrepresentation of African Americans in the jury venire was due to systematic exclusion in the jury-selection process, and it was structural error for the district court to deny the motion without holding an evidentiary hearing. We disagree.
>
> In making his request for a new jury venire, Williams stated only that there were no African Americans in the venire. He did not allege that the underrepresentation of African Americans in that venire was a result of systematic exclusion in the jury-selection process, nor did he request an evidentiary hearing to inquire into the jury-selection process. *See Williams v. State*, 121 Nev. 934, 940, 125 P.3d 627, 631 (2005); *Duran v. Missouri*, 439 U.S. 357, 366 (1979). Thus, he failed o show a prima facie violation of the fair-cross-section requirement. *See Williams*, 121 Nev. at 940, 125 P.3d at 631. Williams' reliance on *Buchanan* is misplaced, as *Buchanan* held only that, if a district court determines that an evidentiary hearing is warranted on a motion to strike a jury venire, the district court must hold

> the hearing before denying the motion. 130 Nev., Adv. Op. 82, 335 P.3d at 210. Because Williams did not allege sufficient facts to warrant further inquiry, the district court did not err in denying his motion to strike the jury venire without conducting an evidentiary hearing.

Order of Affirmance, Exh. 58, pp. 1–2 (ECF No. 11-26, pp. 2–3).

The Nevada Supreme Court's ruling was reasonable. "[T]he selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." *Taylor v. Louisiana*, 419 U.S. 522, 528 (1975). However, the Court in *Taylor* stated:

> It should also be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, *Fay v. New York*, 332 U.S. 261, 284, 67 S.Ct. 1613, 1625, 91 L.Ed. 2043 (1947); *Apodaca v. Oregon*, 406 U.S., at 413, 92 S.Ct., at 1634 (plurality opinion); but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.

*Id*. at 538. To make a prima facie showing that there has been violation of the defendant's right to a jury selected from a representative cross section of the community, the defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979). Under the third prong, the disproportionate exclusion need not be intentional to be unconstitutional, but it must be systematic. *See Randolph v. California*, 380 F.3d 1133, 1141 (9th Cir. 2004). Williams has never made any colorable allegation that African Americans were systematically excluded from the venire from which his jury was chosen.

The Nevada Supreme Court's ruling on this claim was not contrary to, or an unreasonable application of *Taylor* or *Duren*, or any other Supreme Court precedent. The Court will deny Williams habeas corpus relief with respect to Ground 1.

Ground 2

In Ground 2, Williams claims that his federal constitutional right to a speedy trial was violated. Petition for Writ of Habeas Corpus (ECF No. 6), p. 4.

Williams also asserted this claim on his direct appeal, and the Nevada Supreme Court ruled as follows:

> ... Williams argues that the district court violated his constitutional right to a speedy trial. "[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett v. United States*, 505 U.S. 647, 651, 52 (1992) (quoting *Barker v. Wingo*, 407 U.S.514, 530–31 (1972). Courts have generally found post-accusation delays to be presumptively prejudicial as they approach the one-year mark. *Id*. at 652 n.1. Williams was arraigned on December 26, 2013, at which time he invoked his right to a speedy trial, and his trial began on April 14, 2014. [Footnote: We note that most of the delay was attributable to Williams' conflicts and dissatisfaction with his attorneys and his decision to represent himself.] We conclude that Williams has not demonstrated that the 109-day period between his arraignment and his trial constituted a presumptively prejudicial delay. [Footnote: Even if, as argued by Williams, the delay should be calculated from the date his arraignment was originally scheduled – November 26, 2013 – this 139-day period would still not be presumptively prejudicial.] Therefore, the delay did not trigger a constitutional speedy trial analysis. Accordingly, Williams did not suffer a deprivation of his constitutional right to a speedy trial.

Order of Affirmance, Exh. 58, pp. 2–3 (ECF No. 11-26, pp. 3–4).

The Court finds that Williams' claim is meritless, and that the Nevada Supreme Court's ruling was reasonable. The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. The right to a speedy trial is "amorphous," and "necessarily relative," and its application "depends upon circumstances." *Barker v. Wingo*, 407 U.S. 514, 522 (1972) (internal quotation marks omitted). The analysis of a claimed violation of the right to a speedy trial requires application of a balancing test. *Id*. at 522, 530. Courts reviewing such a claim are to consider four factors: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) prejudice to the defendant. *Id*. at 530–32. These factors "must be considered together with such other circumstances as may be relevant." *Id*. at 533. In this case, Williams' trial commenced less than four months after his arraignment; while Williams did assert his right to a speedy trial, much of the alleged delay was plainly

attributable to Williams himself; and Williams has not shown that his defense was prejudiced by the alleged delay. Willaims' federal constitutional right to a speedy trial was not violated.

As the Nevada Supreme Court's ruling on this claim was not contrary to, or an unreasonable application of *Barker*, or any other Supreme Court precedent, the Court will deny Williams habeas corpus relief with respect to Ground 2.

Ground 3

In Ground 3, Williams claims that his federal constitutional rights were violated because of ineffective assistance of his counsel before he began to represent himself, because of ineffective assistance of his stand-by counsel, and because he did not knowingly and voluntarily choose to represent himself. Petition for Writ of Habeas Corpus (ECF No. 6), p. 7.

Williams raised the first part of Ground 3 – his claims that the attorneys who represented him before he began to represent himself, as well has his stand-by counsel, were ineffective – in his state habeas action, and the Nevada Court of Appeals ruled on the claim as follows:

> First, Williams claims the district court erred by denying his claim pre-*Faretta* counsel was ineffective. [Footnote: *Faretta v. California*, 422 U.S. 806 (1975).] Williams claimed his pre-*Faretta* counsel was ineffective for failing to discover evidence regarding the victim's prior false allegation and for failing to communicate with Williams. Williams failed to demonstrate counsel was deficient or resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432–33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*).
>
> Williams failed to demonstrate counsel failed to discover evidence regarding the victim's prior false allegation. Williams had the written statements taken by the police and the 911 call from the incident. The record indicates no police report was created and Williams failed to demonstrate a portion of the 911 call was withheld from him. Further, he failed to demonstrate the alleged missing portion of the 911 call contained exculpatory or impeachment evidence. Finally, Williams failed to demonstrate counsel failed to communicate with him or that had counsel communicated further, the result of the proceedings would have been different because Williams ultimately represented himself at trial. Therefore, the district court did not err by denying these claims.
>
> Second, Williams claims the district court erred by denying his claim that standby counsel was ineffective. Because Williams was not

> entitled to the appointment of standby counsel, *see Harris v. State*, 113 Nev. 799, 804, 942 P.2d 151, 155 (1997), he was not entitled to the effective assistance of standby counsel, *McConnell v. State*, 125 Nev. 243, 252–53, 212 P.3d 307, 314 (2009); *see also McKague v. Warden*, 112 Nev. 159, 164–65, 912 P.2d 255, 258 (1996) (holding a postconviction petitioner who has no constitutional or statutory right to the appointment of counsel has no right to the effective assistance of post-conviction counsel). Therefore, the district court did not err in denying this claim.

Order of Affirmance, Exh. 80, pp. 1–2 (ECF No. 12-17, pp. 2–3).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id*. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. With respect to Williams' claims about the attorneys who represented him before he began to proceed *pro se*, the Nevada Court of Appeals' ruling was reasonable. Williams does not specify or substantiate any alleged shortcoming of counsel's performance, and he does not show prejudice flowing from any of the inadequate performance he alleges.

This Court also agrees with the Nevada Court of Appeals' ruling regarding Williams' claim that he received ineffective assistance from his standby counsel. "[W}here there is no constitutional right to counsel there can be no deprivation of

effective assistance." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citing *Wainwright v. Torna*, 455 U.S. 586 (1982)). "A criminal defendant does not have an absolute right to both self-representation and the assistance of counsel." *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981). Therefore, Williams' claim that his constitutional rights were violated on account of ineffective assistance of his standby counsel fails as a matter of law. *See United States v. Cochrane*, 985 F.2d 1027, 1029 (9th Cir. 1993) (rejecting as a matter of law that "standby counsel appointed to assist [the defendant]" provided ineffective assistance of counsel).

Williams asserted the second part of Ground 3 – his claim that he did not knowingly and voluntarily choose to represent himself – on his direct appeal, and the Nevada Supreme Court ruled as follows:

> ... Williams contends that the district court abused its discretion in allowing him to represent himself at trial because his waiver of counsel was not knowingly and intelligently made. Specifically, Williams contends that he chose to represent himself only because he did not feel that his attorneys were effective and because he wanted to raise a speedy trial claim. Williams also argues that he clearly did not have formal legal training, did not know how to subpoena witnesses or pick a jury panel, and did not know the rules of evidence.
>
> "[T]o exercise the right to self-representation, a criminal defendant must knowingly, intelligently, and voluntarily waive the right to counsel." *Hooks v. State*, 124 Nev. 48, 53–54, 176 P.3d 1081, 1084 (2008). A valid waiver of the right to counsel entails the district court apprising "the defendant fully of the risks of self-representation and of the nature of the charged crime so that the defendant's decision is made with a clear comprehension of the attendant risks." *Id*. at 54, 176 P.3d at 1084 (internal quotation marks omitted). Here, the district court conducted a very thorough canvass during which the district court apprised Williams of the dangers of self-representation and specifically pointed out Williams' lack of legal knowledge and experience. Williams indicated that he understood the nature of the charges and potential penalties and the risks of representing himself. The record as a whole shows that his decision to waive his right to counsel was knowing, intelligent, and voluntary. *Id*. at 55, 176 P.3d at 1085 (concluding that in reviewing decision to allow self-representation, this court considers district court's canvass and entire record, giving deference to district court's decision). While Williams made repeated statements during the canvass that he wanted to file a motion to dismiss the charges on speedy trial grounds and that he was dissatisfied with his appointed attorneys because they refused to file it, he unequivocally stated that he still wished to represent himself even after the district court indicated to him that such a motion would be frivolous. Williams' contention that he did not have the ability to adequately represent himself has no bearing on whether he knowingly, intelligently,

> and voluntarily waived his right to counsel. *See Vanisi v. State*, 117 Nev. 330, 341, 22 P.3d 1161, 1172 (2001). Accordingly, we conclude that the district court did not abuse its discretion in this regard.

Order of Affirmance, Exh. 58, pp. 3–4 (ECF No. 11-26, pp. 4–5).

This ruling by the Nevada Supreme Court was reasonable. "[T]he Sixth and Fourteenth Amendments include a 'constitutional right to proceed *without* counsel when' a criminal defendant 'voluntarily and intelligently elects to do so.'" *Indiana v. Edwards*, 554 U.S. 164, 170 (2008) (quoting *Faretta v. California*, 422 U.S. 806, 807 (1975)) (emphasis in original). A defendant's waiver of his right to counsel is knowing, voluntary and intelligent if he acts "with full awareness of the 'dangers and disadvantages of self-representation.'" *Arrendondo v. Neven*, 763 F.3d 1122, 1129 (9th Cir. 2014) (quoting *Faretta*, 422 U.S. at 835). This Court has examined the trial court's extensive canvass of Williams with respect to his waiver of counsel, and finds that Williams was fully apprised of, and was aware of, the dangers and disadvantages of self-representation. *See* Transcript, March 11, 2014, Exh. 19 (ECF No. 10-19). Williams makes no showing that his waiver of counsel was other than knowing, voluntary and intelligent.

The state court rulings on these claims were not contrary to, or an unreasonable application of *Strickland, Edwards,* or *Faretta*, or any other Supreme Court precedent. The Court will deny Williams habeas corpus relief with respect to Ground 3.

Ground 4

In Ground 4, Williams claims that his federal constitutional rights were violated because of ineffective assistance of his counsel before he began to represent himself, and because of ineffective assistance of counsel on his direct appeal. Petition for Writ of Habeas Corpus (ECF No. 6), p. 3.

To the extent that in Ground 4 Williams claims ineffective assistance of his counsel before he began to represent himself, the Court denies relief on that claim as is discussed, above, with respect to Ground 3.

Williams' claim of ineffective assistance of his appellate counsel, in its entirety, is as follows:

> Direct Appeal counsel ... refused to raise all the issues even though she said she would go over the opening brief and closing arguments before she turned them in. I got a docket sheet from the Supreme Court of Nevada that showed [she] took several time extensions without communicating with me. [She] told me "you can claim I was ineffective on post-conviction."

Petition for Writ of Habeas Corpus (ECF No. 6), p. 3. This claim is meritless on its face. Williams does not specify what issues he believes his appellate counsel should have, but did not, assert on his appeal. And, Williams does not explain how he might have been prejudiced by his appellate counsel "taking" extensions of time. As such, Williams does not show that the Nevada Court of Appeals' ruling on this claim was contrary to, or an unreasonable application of *Strickland* or any other Supreme Court precedent. The Court will deny Williams habeas corpus relief with respect to Ground 4.

Grounds 6 and 7a

In Ground 6, Williams claims that his federal constitutional rights were violated because he was denied discovery of evidence related to false accusations made previously against him by one of the victims in this case, and because he was not allowed to present such evidence at trial. Petition for Writ of Habeas Corpus (ECF No. 6), p. 7. And, in what the Court has designated Ground 7a, Williams asserts the closely related, if not identical, claim that the prosecution failed to disclose evidence related to false allegations made previously against him by one of the victims in this case. *Id*. at 7A.

In the August 6, 2018 order, ruling on Respondents' motion to dismiss, the Court determined that these claims were held to be procedurally barred in state court, and are subject to the procedural default doctrine in this case, but Williams might be able to overcome the procedural default by showing that his appellate counsel was ineffective. *See* Order entered August 6, 2018 (ECF No. 26), pp. 5–7.

In *Coleman v. Thompson*, the Supreme Court held that a state prisoner who fails to comply with state-law procedural requirements in presenting his claims is barred by the adequate and independent state ground doctrine from obtaining a writ of habeas

corpus in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991) ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989), citing *United States v. Frady*, 456 U.S. 152, 170 (1982).

Williams argues that his appellate counsel was ineffective for not asserting these claims on his direct appeal, and there was, therefore, cause for the procedural default of them. On the appeal in Williams' state habeas action, the Nevada Court of Appeals ruled, as follows, on that claim that Williams' appellate counsel was ineffective:

> ... Williams claimed appellate counsel should have argued the prosecutor committed misconduct by withholding evidence. Specifically, he claimed the State withheld a police report and a portion of a 911 call from a previous incident involving the victim. Williams failed to demonstrate appellate counsel was deficient or resulting prejudice because he failed to demonstrate his claims of prosecutorial misconduct would have a reasonable likelihood of success on appeal. Williams failed to demonstrate the State withheld evidence or the evidence was material. *See Mazzan v. Warden*, 116 Nev. 48, 66, 993 P.2d 25, 36 (2000) (setting forth the components to prove a *Brady v. Maryland*, 373 U.S. 83 (1963), violation).

Order of Affirmance, Exh. 80, pp. 3–4 (ECF No. 12-17, pp. 4–5).

The Court agrees with the ruling of the Nevada Court of Appeals. Williams has not shown that the State withheld evidence regarding the prior incident, and he has not shown that any allegedly withheld evidence might conceivably have affected the outcome of his trial. There is no showing of a reasonable probability that, but for appellate counsel's alleged errors, the result of his appeal would have been different.

Therefore, this Court determines that Williams does not show cause and prejudice regarding his procedural defaults of Grounds 6 and 7a, such as to overcome the procedural defaults. The Court will deny Williams habeas corpus relief with respect to Grounds 6 and 7a, as those claims are barred by the procedural default doctrine.

Ground 7e

In Ground 7e, Williams claims that the trial court interrupted his cross-examination of witnesses. Petition for Writ of Habeas Corpus (ECF No. 6), p. 7A ("Leavitt interrupted my examination of witnesses repeatedly.").

Here too, in the August 6, 2018 order, the Court determined that this claim was held procedurally barred in state court, and is subject to the procedural default doctrine in this case, but Williams might be able to overcome the procedural default by showing that his appellate counsel was ineffective. See Order entered August 6, 2018 (ECF No. 26), pp. 5–7.

On the appeal in Williams' state habeas action, the Nevada Court of Appeals ruled, as follows, on this claim that Williams' appellate counsel was ineffective:

> ... Williams also claimed appellate counsel should have argued the district court demonstrated judicial bias because the judge admonished him several times during his cross-examination of witnesses and stated it did not "care about the Nevada Supreme Court." Williams failed to demonstrate the district court was biased against Williams, and therefore he failed to demonstrate appellate counsel was ineffective.
>
> [R]ulings and actions of a judge during the course of official judicial proceedings do not establish legally cognizable grounds for disqualification." *See In re Petition to Recall Dunleavy*, 104 Nev. 784, 789–90, 769 P.2d 1271, 1275 (1988). The district court admonished Williams several times during his cross-examination because he repeatedly ignored the order of the court to refrain from asking about

> certain issues pertaining to the victim's HIV status and a sexual assault. These admonishments were within the actions of a judge made during the course of official proceedings

Order of Affirmance, Exh. 80, p. 4 (ECF No. 12-17, p. 5).

The Court agrees with the Nevada Court of Appeals that Williams has not shown his appellate counsel to have been ineffective, under *Strickland*, for not asserting a claim based on the trial court's "interruptions" of his cross-examinations. As far as state law goes, the Nevada Court of Appeals' ruling establishes authoritatively that such a claim would have been for naught. And, Williams does not state any colorable theory as to how the trial court's alleged interruptions might have violated his federal constitutional rights. There is no showing of any reasonable probability that the outcome of Williams' appeal would have been different if his appellate counsel had asserted this claim. As appellate counsel was not ineffective in this regard, Williams does not show cause and prejudice such as to overcome the procedural default of Ground 7e. The claim designated Ground 7e is barred by the procedural default doctrine.

Ground 8

In Ground 8, Williams claims that the cumulative effect of the errors in his case deprived him of his federal constitutional rights. Petition for Writ of Habeas Corpus (ECF No. 6), p. 7A. The Court determines that there were no errors, so there are no errors to be considered cumulatively. The Court will deny Williams habeas corpus relief with respect to Ground 8.

Certificate of Appealability

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. The issue becomes somewhat more complicated where, as here, the district court dismisses the petition based on procedural grounds. We hold as follows: When the district court denies a habeas petition on procedural

> grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000).

The Court finds that, applying the standard articulated in *Slack*, a certificate of appealability is unwarranted. The Court will deny Williams a certificate of appealability. (Williams may still appeal from the judgment in this case by filing a notice of appeal in this case in this Court and seeking a certificate of appealability from the Ninth Circuit Court of Appeals.)

Conclusion

**IT IS THEREFORE ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 6) is denied.

**IT IS FURTHER ORDERED** that Petitioner is denied a certificate of appealability.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter judgment accordingly.

DATED THIS 25th day of November, 2019.

HOWARD D. McKIBBEN,
UNITED STATES DISTRICT JUDGE